IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| ------------------------------------------------------- | . | CASE NO. 05 CV 2441 |
|---|---|---|
| DIANA L. VISTEIN, | : | |
| | : | ORDER ADOPTING THE REPORT |
| Plaintiff, | : | AND RECOMMENDATION GRANTING |
| | : | IN PART AND DENYING IN PART |
| -vs- | : | DEFENDANT'S MOTION FOR |
| | : | SUMMARY JUDGMENT AND |
| THE AMERICAN REGISTRY OF | : | GRANTING IN PART AND DENYING IN |
| RADIOLOGIC TECHNOLOGISTS, | : | PART PLAINTIFF'S MOTION FOR |
| | : | SUMMARY JUDGMENT, AND, |
| Defendant. | : | DENYING PLAINTIFF'S REQUESTS |
| | : | FOR DECLARATORY JUDGMENT AND |
| ------------------------------------------------------- | : | INJUNCTIVE RELIEF |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiff Diana Vistein ("Ms. Vistein") filed the complaint in this action on

12 September 2005 in Ashland County Court of Common Pleas.  (Docket No. 1).  The

case was removed to this Court on 21 November 2005, pursuant 28 U.S.C. § 1331.

(Docket No. 11).  Ms. Vistein alleges the defendant, the American Registry of

Radiologic Technologists ("the ARRT"), (1) violated her due process rights under the

United States Constitution and under the Ohio Constitution, and (2) tortuously interfered

with her contractual and/or business relationships, when the defendant revoked her

certification with the American Registry of Radiologic Technologists.  (Docket No. 1).

On 17 March 2006 this Court granted ARRT leave to file the following

counterclaims: (1) Federal Trademark Infringement under Sections 32(1)(a) and 43(a)

1

of the Lanham Act, (2) Common Law Trademark Infringement, (3) Federal Dilution under Section 43 of the Lanham Act, (4) Federal Unfair Competition under Section 43 of the Lanham Act, (5) Common Law Unfair competition, (6) violation of the Ohio Deceptive Trade Practices Act, (7) Indemnification, and (8) Breach of contract.  (See Docket No. 21, Ex. 2).  ARRT bases its claims on the allegation that Ms. Vistein made improper use of the defendant's mark in securing and maintaining employment as a radiologic technologist.  Id.

On 24 October 2006 ARRT filed a motion for summary judgment (Docket No. 55).  Ms. Vistein filed a motion for summary judgment on 22 November 2006.  Both parties briefed timely responses and replies.  On 10 January 2007, this matter was referred to United States Magistrate Judge Kenneth S. McHargh for Report and Recommendation ("R&R").   The Magistrate Judge's R&R advises ARRT's motion for summary judgment be granted against all of Ms. Vistein's claims but for the application of the ARRT's breach of contract and indemnification counterclaim to the plaintiff's tortious interference claim.  The R&R further advises Ms. Vistein's motion for summary judgment be denied against all of the ARRT's counterclaims but for the application of the ARRT's breach of contract and indemnification counterclaim to the plaintiff's tortious interference claim.  (Docket No. 67 (hereinafter "R&R")).   Ms. Vistein filed timely objections to the R&R on 26 March 2007.  (Docket No. 68).  ARRT responded on 12 April 2007.  (Docket No. 69).  This matter is now ripe for consideration.

## I. Background

Defendant ARRT is a national credentialing and registry of radiologic technologists.  (Docket No. 55, Kraker Affidavit. ¶2 (hereinafter "Kraker Aff.")).   Formed in 1922 as the American Registry of X-Ray Technicians, the ARRT adopted the name it has today in 1962.  Id.   Among the ARRT's functions are promotion of education and competence in the profession of radiologic technology through continuing education.  (Docket No. 55, Kraker Aff. Ex. A).  The ARRT also encourages and monitors the ethical practice of Registered Technologists through the publication and enforcement of the profession's Code of Ethics.  Id.   ARRT provides "its registrants with a certificate and credential card stating the technologist has satisfied the ARRT's educational, testing, and other requirements."  (Kraker Aff. ¶7).   Furthermore ARRT grants its registrants "the right to state on resumes, job applications and other documents that they have satisfied the ARRT's requirements and are registered with the ARRT."  (Kraker Aff. ¶7).

Ms. Vistein is a radiologic technologist, who was registered and certified with the ARRT almost continually from 1968 to 2003.  (Docket No. 58, Vistein Deposition (hereinafter "Vistein Dep") pp. 35-36; Kraker Aff. ¶¶9-14).  In June 2003, Ms. Vistein allowed her registration with the ARRT to lapse after she allegedly failed to submit her renewal application.  (Kraker Aff. ¶¶9-10, 14).  At some time after her registration lapsed and before June 2004, Ms. Vistein altered the date on her ARRT card, changing "2003" to "2004."  (Vistein Dep. p. 171).  Ms. Vistein explained the alteration occurred because she wished to make "a clerk of [hers] an honorary tech."  Id. at 170-174.  Apparently Ms. Vistein was arranging a mock ceremony in which she would present her clerk with the

3

ARRT card.  Id.  She limited the alteration of the card to the date, however, realizing that doing more "just wasn't right."  Id. at 174.

In June 2004, Ms. Vistein submitted her ARRT card to the Ohio Department of Health ("ODH") to demonstrate she had fulfilled the necessary continuing education requirements.  (Vistein Dep. pp. 40, 100-101).   Noting the date on the card had been altered, ODH contacted the ARRT to verify Ms. Vistein's registration status.  (Kraker Aff. ¶15).  The ARRT informed ODH that Ms. Vistein's registration had lapsed and that the card she had submitted was not valid.  Id.

On 29 June 2004 the ARRT sent Ms. Vistein a cease-and-desist letter informing her that her conduct was unlawful and could subject her to civil damages as well as criminal prosecution.  (Kraker Aff. ¶19).  ARRT also informed Ms. Vistein the ARRT Ethics Committee would be reviewing her conduct at its next meeting.  Id.  The ARRT requested Vistein submit an explanation of her conduct within thirty days of the cease and desist letter.  (Kraker Aff ¶ 19).  Ms. Vistein offered an explanation dated 12 July 2004.  (Kraker Aff ¶24).

At the time, Ms. Vistein was employed by the Cleveland Clinic Foundation ("CCF") as Department Manager in the Department of Radiology.  (Docket No. 58, Vistein Dep. pp. 36-38). In order to maintain her position, her employer required she be registered with the ARRT.  Id. at 36-38; 47.  After receiving the cease-and-desist letter from the ARRT, Ms. Vistein informed the CCF she was no longer registered with the ARRT.  Id. at 47.  Her employer offered her the choice of taking an unpaid leave until the matter was resolved.  Id. 47-48.  Ms. Vistein instead chose to resign.  Id. at 53. Prior to Ms. Vistein's receipt of the cease-and-desist letter, she was in contact with a

4

recruiter at Samaritan Regional Health System.  Id. at 57-61.  She interviewed with Samaritan and informed the interviewer that she was resolving some credentialing issues.  Id. at 61.  Ms. Vistein was offered a position with Samaritan as Director of Radiology, which she accepted.  Id. at 72-73.  It was Ms. Vistein's understanding that the position at Samaritan did not require her to be registered with the ARRT. Id. at 69.

At its November meeting the ARRT Ethics Committee concluded Ms. Vistein had violated the ARRT Standards of Ethics when she submitted an altered ARRT card to the ODH.  (Docket No. 55, Ex. 22).  On 19 November 2004 the Ethics Committee sent Ms. Vistein a letter explaining that conclusion.  Id.  The letter also informed Ms. Vistein the ARRT Ethics Committee was recommending revocation of her ARRT certification.  Id. Ms. Vistein was allowed to request a hearing within thirty days from the date the letter was mailed.  Id.  Ms. Vistein claims that she never received this letter (Docket No. 58, Vistein Dep. p. 132), but admits she was aware that an investigation was underway and that a decision was imminent.  Id. at 121-122, 132, 155-156.  Ms. Vistein did not attempt to discover the outcome of the ARRT Ethics Committee meeting, nor did she request a hearing.  Id. at 133-137.

In April 2005, in its annual report the ARRT published its finding that Ms. Vistein had been ethically sanctioned by the Ethics Committee.  (Docket No. 1, Att. #1, ¶47; Kraker Aff. ¶¶ 20-22).  On 18 April 2005, Samaritan contacted the ARRT regarding Ms. Vistein's ethical sanctions.  (Kraker Aff. ¶¶29-30).  Because Ms. Vistein was unable to get the sanction lifted, Samaritan terminated her employment on 15 September 2005. (Vistein Dep. 162-164).

Subsequently, Ms. Vistein brought suit against the ARRT alleging (1) violation of

due process pursuant to 42 U.S.C. § 1983 and the Ohio Constitution, and (2) intentional interference with her contractual and/or business relationships. (Docket No. 1)

## II. Defendant's motion for summary judgment

In its motion for summary judgment, the ARRT argues (1) Ms. Vistein's claims of violation of due process and tortious interference are barred because she contractually waived and released those claims, (2) the ARRT is statutorily immune from liability pursuant to O.R.C. § 2301.251, and, (3) Ms. Vistein's claims of violation of due process and tortious interference with a business contract fail on their merits.

In her reply, Ms. Vistein contends the waiver and release upon which the ARRT relies is an unconscionable contract of adhesion.  Therefore, because the contract is unenforceable, she maintains her claims are not barred.  Further, Ms. Vistein argues the statutory immunity claimed by the ARRT under O.R.C. § 2301.251 is inapplicable, making her recovery permissible.  Lastly, she argues that both her claims succeed on their merits.

## III. Magistrate Judge McHargh's Report and Recommendation

Magistrate Judge McHargh recommends the waiver of liability upon which the ARRT relies does constitute a valid and enforceable agreement with respect to Ms. Vistein's due process claims.  (Docket No. 67, pp. 8-13).  The R&R advises that the contract was not unconscionable because Ms. Vistein has not demonstrated both procedural and substantive unconscionability.  Id.  The Magistrate Judge also recommends the agreement does not bar Ms. Vistein from asserting intentional tortious

6

interference, because a party cannot contractually limit its liability for intentional acts. Id. at 13.

The R&R advises that O.R.C. § 2305.251 is applicable to the ARRT and precludes Ms. Vistein from recovering damages for her due process and intentional tortious interference claims.  (R&R pp. 13-17).   However, the R&R recommends the immunity it provides extends only to the plaintiff's claims for damages.  Id. at 14. Therefore, the R&R recommends Ms. Vistein's claims for injunctive and declaratory relief are not precluded under O.R.C. § 2305.251.  Id.  The R&R thoroughly reviews the merits of the plaintiff's due process and intentional tortious interference claims and recommends disposing of them on the merits.  (R&R, pp. 17-21 & 21-26).

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), this Court reviews de novo those portions of the Magistrate Judge's R&R to which specific objections are made.   Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). For the reasons set forth below this Court will adopt the reasoning of the R&R, granting in part and denying in part defendant's motion for summary judgment, and granting in part and denying in part plaintiff's motion for summary judgment.

### IV. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct.

8

1348, 89 L.Ed.2d 538 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' "  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.

### V. Law and Analysis

In objecting to the R&R, Ms. Vistein maintains the Magistrate Judge: (1) improperly construed facts against her, the non-moving party; (2) erroneously recommended the waiver and release was binding and enforceable by improperly applying the factors to determine procedural unconscionability; (3) erroneously recommended the ARRT is statutorily immune from liability for money damages; (4) improperly determined the state played no role in the ARRT's internal investigation; and, (5) erred in recommending Ms. Vistein's intentional tortious interference claim lacked merit when advising that Ms. Vistein failed to demonstrate an issue of fact with respect to the actual malice of the ARRT.  (Docket No. 68).

9

The Court will address each of Ms. Vistein's objections in turn.

### A. Objection: Improperly Construing Facts Against the Non-Movant.

Ms. Vistein first asserts the R&R improperly construes facts against her, the non-moving party.   (Docket No. 68, p. 1).  Specifically, Ms. Vistein objects to the recitation in the R&R that she did not submit her application to ARRT.  Id.  Instead, Ms. Vistein claims she did submit her application, but the ARRT failed to process it.  Id.  She further objects to the R&R's observation that she offered conflicting explanations as to why she altered her ARRT membership card.  Id.  Ms. Vistein claims her explanations were not conflicting, and asserts that, contrary to the R&R's characterization,  "clerical employee" and "front desk secretary" refer to the same person.  Id.

Ms. Vistein is correct that when deciding on a motion for summary judgment, the Court must construe the evidence and all inferences to be drawn from it in the light most favorable to the non-moving party.  See Blakeman v. Mead Containers, 779 F.2d 1146, 1150 (6th Cir.1985).  However, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).  The fact distinctions Ms. Vistein raises are neither genuine nor material.

Even assuming, for the sake of argument, there exists a genuine issue with respect to the facts Ms. Vistein cites, she fails to explain how those facts are material to the disposition of the issues now before the Court.  Ms. Vistein received a cease-and-desist letter from the ARRT after she submitted an expired, but altered to look

10

unexpired, registration card to the ODH.  Whether prior to that point in time Ms. Vistein submitted her application to the ARRT has no bearing on the legal contours animating the Court's decision.  The same holds true for her explanations as to why she altered her membership card.  Accordingly, this Court determines Ms. Vistein's first objection has no merit.

### B. Objection: Contractual Limitation of Liability

In its motion for summary judgment, the ARRT argues against Ms. Vistein's claims of due process and tortious interference as contractually waived and released by the agreement.   (Docket No.  55, att. 1, pp. 5-7).  Further, the ARRT cites contractual language in the agreement which requires Ms. Vistein to "indemnify and hold harmless, the ARRT...from, against, and with respect to any and all claims, losses, costs, expenses, damages, and judgments (including reasonable attorney fees) arising from her pursuit of this litigation."  Id. at 5.  Ms. Vistein maintains the agreement is an unconscionable contract of adhesion which is, accordingly, non-binding.  (Docket No. 56 pp 5-9).

The R&R advises that because Ms. Vistein had not demonstrated both procedural and substantive unconscionability, the agreement does constitute a valid and enforceable waiver with respect to Ms. Vistein's due process claims.  (Docket No. 67, pp. 8-13).  However, the R&R also recommends that the agreement does not bar Ms. Vistein from asserting intentional tortious interference, because a party cannot contractually limit its liability for intentional acts.  Id. at 13.

11

Ms. Vistein objects to the R&R's determination that the contract was not unconscionable.  Specifically, Ms. Vistein questions the application of the factors to determine procedurally unconscionability.  (Docket No. 68, p. 2).  Ms. Vistein asserts that "ARRT enjoyed the superior bargaining position, the terms were not explained [to her,] and [she] was not represented by counsel."  She further maintains these facts provide sufficient basis for a finding of procedural unconscionability, or at least raise a genuine issue of material fact.

Ohio law characterizes unconscionability as an "absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party."  Collins v. Click Camera & Video, Inc. 86 Ohio App. 3d 826, 832 (Ohio Ct. App. 1993).  Thus, to prove unconscionability the plaintiff must show two things: (1) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., "procedural unconscionability," and (2) unfair and unreasonable contract terms, i.e., "substantive unconscionability."  Id. at 834.  To show unconscionability the plaintiff must satisfy both elements of the two part test.  Id. at 834.

The crucial question with respect to procedural unconscionability is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print."  Lake Ridge Academy v. Carney 66 Ohio St.3d 376, 613 N.E. 2d 183 (Ohio 1993) (quoting Williams v. Walker-Thomas Furniture Co. 350 F.2d 445, 449 (C.A.D.C.1965).  "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., 'age,

12

education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'" Collins, 86 Ohio App. 3d at 834 (quoting Johnson v. Mobil Oil Corp. 415 F. Supp. 264, 268 (E.D. Mich. 1976)).

Ms. Vistein has not established a basis for procedural unconscionability. As reported in the R&R, Ms. Vistein is educated and experienced; she makes no claims she failed to read or understand the waiver; she had signed the same renewal form and waiver for the previous nine years. Over the years she has had opportunity to consult with counsel as to the import of the limitation of the liability clause, and while Ms. Vistein was not represented by counsel at the time the contract was executed, this is not dispositive. See, e.g., Ball v. Ohio State Home Servs., Inc.,168 Ohio App.3d 622, 627 (Ohio App. 2006). Accordingly, this Court finds Ms. Vistein had "a reasonable opportunity to understand the terms of the contract." As such, Ms. Vistein has not, as she must, established the existence of procedural unconscionability.

Furthermore, the R&R recommends this Court find the waiver and release form not substantively unconscionable. Ms. Vistein has offered no objections to this recommendation. Because both elements are necessary for a finding of unconscionability, Ms. Vistein's objection lacks merit.

Therefore, as this Court finds the waiver and release binding and enforceable, Ms. Vistein is barred from asserting her due process claims. She is, accordingly, required to indemnify the ARRT with respect to its losses, costs, expenses, damages, judgments, and attorneys' fees incurred in asserting her due process claim. Because

13

the waiver and release does not bar intentional torts, Ms. Vistein is not required to indemnify the ARRT for losses, costs, expenses, damages, judgments, and attorneys' fees arising from her claim of tortious interference with a business relationship. Furthermore, pursuant to the contract language, Ms. Vistein is not required to indemnify the ARRT for losses, costs, expenses, damages, judgments, and attorneys' fees arising from the defendant's counterclaims.

### C. Objection: Statutory Immunity Under O.R.C. § 2305.251

In its motion for summary judgment, the ARRT maintains it is statutorily immune from Ms. Vistein's claims under O.R.C. § 2305.251, which provides that "no health care entity shall be liable in damages to any person for any acts, omissions, decision, or other conduct within the scope of the functions of a peer review committee of the health care entity."  The ARRT argues it qualifies as a "health care entity" and it should be immune from liability for the actions carried out through its ethics committee.

The Magistrate Judge found O.R.C. § 2305.251 applicable to the ARRT.  (R&R pp. 13-17).  However, the immunity it provides extends only to the plaintiff's claims for damages.  Id. at 14.  Therefore the R&R recommends that Ms. Vistein's claims for injunctive and declaratory relief are not precluded under O.R.C. § 2305.251.  Id.

Ms. Vistein offers no new arguments in her objections to the Magistrate Judge's recommendation that the ARRT's liability for money damages is statutorily limited under O.R.C. § 2305.251.  Because this Court does not abuse its discretion when adopting an R&R when a party fails to raise any new arguments in its objections, see Brumley v. Wingard, 269 F.3d 629, 647 (6th Cir. 2001), this Court, finding the reasoning of the R&R

14

sound, adopts the R&R with respect to the ARRT's statutory immunity under O.R.C. § 2305.251.

However, the ARRT's immunity under O.R.C. § 2305.251 may be defeated by a showing of actual malice.  See Jacobs v. Frank, 60 Ohio St. 3d 111, 113 (Ohio 1991); Wall v. Ohio Permanente Med. Group, et al., 199 Ohio App. 3d 654, 666 (Ohio Ct. App. 1997).  In her objections, Ms. Vistein urges the Court to find a genuine issue of material fact as to whether the ARRT acted with actual malice when it reported her ethical violations to the CCF and Samaritan.  (Docket No. 68, pp. 3-4).  Ms. Vistein argues the ARRT's Ethics Committee's failure to consider her motives when she altered the date on her ARRT card demonstrates it acted with reckless disregard for the truth when it reported her ethical sanctions.  Id.

"Actual malice in this context requires proof that the defendant[ ] made statements in connection with a peer review process with knowledge they were false or with reckless disregard for whether they were true or false."  Wall, 199 Ohio App. 3d at 666 (citing Jacobs v. Frank, 60 Ohio St. 3d 111, 114-115 (Ohio 1991)).  "[T]he party seeking relief must present evidence that the defendant[ ] knew the statements were false, entertained serious doubts about whether they were false, or disregarded a high probability that they were false."  Id.

Ms. Vistein has not supplied evidence that satisfies the standard established in Wall.  The ARRT's purported failure to investigate Ms. Vistein's motives in altering her card does not demonstrate the defendant's knowledge of falsity or reckless disregard for the truth.  The inquiry conducted by the ARRT Ethics Committee does not require a consideration of motive.  (Docket No. 55, Ex 14, pp. 2-3).  The ARRT's Rules of Ethics

15

recommends sanctions when a registrant "engag[es] in any unethical conduct, including, but not limited to, conduct likely to deceive, defraud, or harm the public," or where the registrant,

> engag[es] in false, fraudulent, deceptive or misleading communications to any person regarding the individual's education, training, credentials, experience, or qualifications, or the status of the individual's state permit, license or registration certificate in radiologic technology or certificate of registration with ARRT.

Id. at 3.

Ms. Vistein's alteration of her ARRT card falls squarely into prohibited conduct outlined in the ARRT Rules of Ethics, and her motivation in making the alteration is not a consideration within the rules.  Ms. Vistein admits she was aware of the ARRT's ethical rules.  (Docket No. 58, Vistein Dep. 217-218).  Moreover, her failure to arrange a hearing to address her conduct, which she was allowed to do, tends to show the ARRT Ethics Committee had no reason to believe the report on her behavior was false.

Ms. Vistein has not demonstrated the ARRT acted with knowledge of falsity or reckless disregard for the truth with respect to reporting on her ethical violations.  As she has failed to demonstrate actual malice, the ARRT's statutory immunity under O.R.C. § 2305.251 remains intact.  This Court finds no merit in the plaintiff's objection.


### D.  Objection: The ARRT Engaged in De Facto State Action.

Ms. Vistein takes issue with the R&R's conclusion that the state played no role in the ARRT's internal investigation into her allegedly ethically improper conduct.  Even if, as the plaintiff asserts in her objections to the R&R, "the State initiated [AART's] investigation [of Ms. Vistein] through its phone call, was the primary "witness" relied on

by the AART, and took concurrent action to deny Vistein a state license based upon AART's ...investigation," Ms. Vistein's 42 U.S.C. §1983 claim on the merits still fails as a matter of law.  (Doc. 68, p.3).

As noted in the R&R, a §1983 claim can only succeed on the merits if the plaintiff can prove a "deprivation of a right secured by the Constitution," and "the deprivation was caused by a person acting under color of state law."  (R&R, p.18) (quoting Wittstock v. Mark A. Van Sile Inc., 330 F.3d 899, 902 (6th Cir. 2003)).  Here, the uncontested record indicates the AART is a private, non-profit credentialing agency. Nonetheless, as detailed in the R&R, the United States Supreme Court has determined that a private actor's actions may be attributable to the state if one of the three following tests is met: (1) the public function test; (2) the state compulsion test; or (3) the symbiotic relationship or nexus test.  (R&R, p.19).

As further discussed in the R&R, the ARRT's investigation into Ms. Vistein's altered membership card does not pass the public function test for de facto state action by a private actor. (R&R, pp.19-20).  Such functions are those "traditionally exclusively reserved to the state, such as holding elections . . . or eminent domain."  Wolotsky, 960 F.2d at 1335.  The ARRT is a private, national credentialing agency for radiological technicians and thereby does not perform functions "traditionally exclusively reserved to the state."  See Talwar v. Catholic Healthcare Partners, et al., No. 05-7437, 2006 U.S. Dist. LEXIS 88280 (N.D. Ohio 2006) (a private entity's investigation into an individual's medical practice does not count as a traditionally exclusive state function);  McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ., 24 F. 3d 519, 525 (3rd Cir.

17

1994) (evaluation and accreditation of medical education is not a traditionally exclusive state function).

Neither do the ARRT's actions meet the state compulsion test. Here, the state must "exercise such coercive power or provide such significant encouragement [to the private actor] that in law the choice of the private actor is deemed to be that of the state." Wolotsky 960 F.2d at 1335.  Nothing in the record indicates that the state either coerced or significantly encouraged the ARRT's investigation of Ms. Vistein.

Ms Vistein's claims also fail the nexus test. To pass this test, the United States Supreme Court has held

> [t]he State [must have] so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment.

Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961).  Here, as Ms. Vistein observes, there is relatively frequent communication between the ARRT and the ODH. The ARRT and the ODH are in telephonic contact on a weekly basis, the ODH uses the ARRT credentialing test to determine radiologic licensing eligibility, and the ARRT informs ODH about members under sanction for ethics violations.

However, nothing in the record demonstrates that ODH has "so insinuated itself" into ARRT's governance and operations as to allow this Court to consider ODH a "joint participant" in the ARRT's investigation into Ms. Vistein's allegedly ethically improper conduct.  Ms. Vistein has presented no evidence that the ODH had control over the ARRT's board of directors, its bylaws or rules, funding for the ARRT, or directed, or even encouraged, the ARRT's investigation into Ms. Vistein.

18

Accordingly, Ms. Vistein does not demonstrate that the ARRT should count as a state actor, thus her §1983 claim fails.

### E.  Objection: The ARRT Exercised Actual Malice.

The existence of actual malice is essential to Ms. Vistein's claim for intentional tortious interference with business relations.  In her objection to the R&R, Ms. Vistein argues there is a genuine issue of material fact as to whether the ARRT behaved with actual malice when it communicated to Samaritan its findings concerning her alleged ethical misconduct.

The plaintiff's claims notwithstanding, nothing in the record indicates "the [ARRT's] obvious goal was to make Vistein's conduct seem worse than it actually was." (Doc. 68, p.5).  As noted in the R&R, "the evidence demonstrates that the communications made by the ARRT to Samaritan were made to an interested entity at that entity's request and were limited in scope to Samaritan's inquiry." (R&R, p. 26).

As already discussed in connection with Ms. Vistein's challenge to the ARRT's statutory immunity claim, to show actual malice the plaintiff must satisfy a demanding standard.  See Wall, 199 Ohio App.3d at 666.  Under Ohio law,  "when a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice."  Jacobs v. Frank, 60 Ohio St. 3d 111, 116 (Ohio 1991).  Here, and as already noted, Ms. Vistein does not  produce clear and convincing evidence that the ARRT's communications with Samaritan were

19

undertaken with actual malice.  As such, Ms. Vistein's intentional tortious interference claim cannot survive summary judgment.

### VI.  Ms. Vistein's Claims for Declaratory Judgment and Injunctive Relief.

In light of the disposition of the plaintiff's claims through summary judgment, the Court reviews, sua sponte, Ms. Vistein's request for a declaratory judgment and for injunctive relief.  (Counts I & V).  Specifically, Ms. Vistein urges this Court to declare her a "Registered Technologist" entitled to display any certificate issued by the ARRT because she allegedly completed "all continuing education requirements necessary for continued certification by the ARRT," and she "returned a renewal application with the required twenty-dollar fee to the ARRT."  (Complaint, ¶¶ 52-60).  Further, Ms. Vistein asks the Court to enjoin ARRT's revocation action as taken without due process and as an act of tortious interference with the plaintiff's contracts.  (Complaint, ¶¶ 86-91).

#### A.  Declaratory Judgment

This Court has authority to grant declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  However, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank, 333 U.S. 426, 431 (1948).

20

The Sixth Circuit applies two principal criteria to determine whether a declaratory ruling is appropriate: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Grand Trunk. W. Railroad Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir.1984).  In addition, the Sixth Circuit considers the following factors in determining whether to grant declaratory relief:

> (1) Whether the judgment would settle the controversy;
>
> (2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;";
>
> (4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) Whether there is an alternative remedy that is better or more effective.
>
> Id.

However, this list of factors is not exhaustive, as "the Court must make a full inquiry into all relevant considerations."  Brotherhood, 200 F.Supp.2d at 692. Ultimately, the dispositive inquiries are "whether the judgment 'will serve a useful purpose in clarifying and settling the legal relationships in issue' and whether it 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' "  Id.  ( citing Aetna, 74 F. 3rd at 687).  If "neither of these results can be accomplished, the court should decline to render the declaration prayed."  Grand Trunk

Western Railroad Co. v. Consolidated Rail Corp., 746 F.2d at 326 (quoting E. Borchard,

Declaratory Judgments 299 (2nd ed.1941)).

In this instance, where Ms. Vistein's registration was revoked for the submission

of an altered ARRT card to the ODH, a declaratory judgment from this Court will neither

clarify nor settle the legal relationships at issue.  Whether Ms. Vistein completed her

continuing education requirements or returned a renewal application with the required

fee has no bearing on the issue at hand, namely, the ARRT's revocation action.

Accordingly, this Court determines Ms. Vistein's request for declaratory judgment not

cognizable.

### B.  Injunctive Relief.

As the Sixth Circuit recognizes, with regard to a request for injunctive relief:

> a district court must consider: "(1) the plaintiffs' likelihood of success on
> the merits; (2) whether the plaintiff may suffer irreparable harm absent the
> injunction; (3) whether granting the injunction will cause substantial harm
> to others; and (4) the impact of an injunction upon the public interest."
> "None of these factors, standing alone, is a prerequisite to relief; rather,
> the court should balance them." Thus, even though a finding of no
> likelihood of success "is usually fatal[,]" a district court should ordinarily
> analyze all of the factors.

Abney v. Amgen, Inc., 443 F.3d 540, 546-47 (6th Cir. 2006).

The foregoing analysis, and this Court's adoption of the R&R's thoroughly argued

recommendations, make clear Ms. Vistein's claims of due process and tortious

interference categorically fail on the merits.  Consequently, this Court lacks a platform

from which to impose injunctive relief in an instance, such as this, where there exists not

merely little likelihood of success on the merits, but where the Court has already

determined that the very grounds upon which the plaintiff seeks an injunction – violation of due process and tortious interference with contracts – are meritless as a matter of law.  Accordingly, this Court declares Ms. Vistein's request for injunctive relief moot.

## VII. DEFENDANT'S COUNTERCLAIMS: LAW AND ANALYSIS

### A.  Trademark Infringement

The ARRT brings counterclaims of Federal Trademark Infringement against Ms. Vistein, pursuant to Section 32(1)(a) (Count 1) and Section 43(a) (Count 2) of the Lanham Act.  (Amended Answer and Counter Claim, Doc. 21, ¶¶ 134-142).  Ms. Vistein has moved for summary judgment on those Counts.  (Doc. 58).  The R&R addresses Ms. Vistein's specific, statutory trademark contentions at length (Doc. 67, pp. 26-35) and denies the plaintiff's motion for summary judgment "with respect to the issues of fraudulent procurement of registration and cancellation" (p. 28) with respect to "whether Plaintiff's use of the ARRT's mark created a likelihood of confusion" (p. 32), with respect to whether the "ARRT was damaged by Plaintiff's use of its mark" (p. 34), and with respect whether the ARRT suffered trademark infringement under Section 43 of the Lanham Act (p. 35).  As well, the R&R recommends denying Ms. Vistein's motion for summary judgment on the ARRT's common law trademark infringement claim (Count 3).  (Doc. 67, p. 36).

In her objections to the R&R's position urging denial of her motion for summary judgment on the ARRT's trademark infringement claims Ms. Vistein contends the following: (1) the R&R erred in not finding the ARRT mark is subject to cancellation and erred in concluding the ARRT's mark is not used as a certification mark; (2) the R&R

23

erred in finding the ARRT's mark satisfied the "use in commerce" requirement; (3) the R&R erred in finding sufficient evidence to raise a genuine issue of material fact as to the likelihood of confusion; and, (4) the R&R erred in not granting Ms. Vistein summary judgment on the issue of damages attendant upon the alleged trademark infringement. (Doc. 68, pp. 4-7).  This Court has reviewed the record, the law, and the arguments as they pertain to Ms. Vistein's objections and finds, for the reasons discussed below, the R&R is not in error.  Accordingly the Court will adopt the R&R's position denying Ms. Vistein's motion for summary judgment on the ARRT's trademark infringement claims.

### 1. Objection: The ARRT Mark with Regard to Cancellation, Certification and Fraud.

To warrant cancellation of the AART's mark, Ms. Vistein must: (1) demonstrate the AART's mark is in fact a certification mark and not the collective membership mark granted by the Patent and Trademark Office ("PTO"); and, (2) show by clear and convincing evidence that the ARRT fraudulently registered with the PTO to procure a collective membership mark.  L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1352 (Fed. Cir. 1999) (citing  Metro Traffic Control, Inc. v. Shadow Network, Inc., 104 F.3d 336, 340, 41 U.S.P.Q.2D (BNA) 1369, 1373 (Fed. Cir. 1997)).

In her objection to the R&R, the plaintiff maintains the ARRT's mark is a certification mark because the ARRT cards are "presented to [the ODH] to certify that continuing education requirements have been met or medical facilities to certify that applicants have met certain ethical standards."  (Doc. 68, p. 5).  The plaintiff then goes on to hypothetically contrast the ARRT with the American Bar Association ("ABA")–"a voluntary membership organization which [does] not certify[ ] anything to the states."  Id.

24

Ms. Vistein misconstrues the nature of a certification mark. Such a mark is held out to the consumer of the goods or services in question

> to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

15 U.S.C. § 1127.  See also Trademark Protection and Practice, § 1.02 (3). Presumably, the consumers of radiologic services are patients and not the ODH or "medical facilities."  The ODH regulates radiologic services and medical facilities sell such services; neither consumes them.  As such and contra the plaintiff's claim, the Magistrate Judge's finding that the "ARRT registrants do not present their cards to patients to show that their services were performed by a member of the ARRT" buttresses the ARRT's position that its mark is not a certification mark.  (R&R, p.27).  At most, membership in good standing in the ARRT is a sufficient condition for having met certain educational and ethical requirements, much as is membership in the ABA.  The ODH and medical facilities can thus use such information as a shortcut to verifying a radiologist's educational and ethical background instead of conducting their own exhaustive inquiry.

Moreover, even if Ms. Vistein were to prevail on the first part of her argument for cancellation, she fails on the second. Specifically, nothing in the record clearly and convincingly indicates that the ARRT fraudulently procured its collective membership mark from the PTO.  Hence, on the instant claim, this Court denies her motion for summary judgment.

25

**2.  Objection: Federal Trademark Infringement-Section 32(1)(a) of the Lanham Act – Use in Commerce, Likelihood of Confusion, and Injury.**

Ms. Vistein moves this Court for summary judgment on the ARRT's trademark infringement claim under Section 32 of the Lanham Act. The plaintiff asserts: (1) she did not violate the "use in commerce" language of the Act, (2) the use of the altered card did not create the likelihood of confusion; and, (3) the ARRT failed to demonstrate  injury. Reviewing each assertion, the Magistrate Judge's recommended denying Ms. Vistein's motion for summary judgment.  The plaintiff has now raised objections to the R&R's recommendation as it pertains to its finding of "use in commerce," likelihood of confusion, and damages.

**a.  "Use in Commerce"**

Upon a review of the record and the parties responses to the R&R, this Court adopts the Magistrate Judge's finding of sufficient evidence from which a jury could conclude that Ms. Vistein's use of the ARRT's mark amounted to "use in commerce" under the Act.  (Doc. 67).

Section 32 (1) (a) of the Lanham Act states:

> Any person who shall, without consent of the registrant--
>
> (a) Use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant...

15 U.S.C. § 1114(1)(a) (2006).

Ms. Vistein argues that presenting her altered card to the ODH did not constitute "use in commerce" because she was not selling goods or services but was rather attempting to renew her state radiologic license.  (R&R, p.29). The facts in the instant case are similar to those in <u>Am. Registry of Radiologic Technologists v Garza</u>.  In <u>Garza</u>, the defendant used an altered ARRT card on a single occasion in an attempt to secure employment.  The court found that he had violated the "use in commerce" clause under 15 U.S.C. § 1125, a provision under the Madrid Protocol.[1]  U.S. Dist. LEXIS 29826 (S. D. Texas May 12, 2006).  Likewise, here, Ms. Vistein submitted her altered ARRT card to the ODH on a single occasion in order to secure continued employment with the Cleveland Clinic.  The record indicates that the plaintiff's use of her altered ARRT card was "connected to the distribution of Plaintiff's services as a radiologic technician."  (R&R, p.29).

The plaintiff's repeated reliance on <u>Lyon v. Quality Courts United, Inc.</u>, is misplaced.  (Doc. 68).  <u>Lyon</u> primarily addresses whether the Lanham Act provides a basis for federal subject matter jurisdiction independent of the diversity of the parties. <u>Lyon v. Quality Courts United, Inc.</u>, 249 F.2d 790, 794-95 (6th Cir. 1957).  Given the evidence in the record, a jury could find that Ms. Vistein's submission of an altered

---

[1]  Any person who, on or in connection with goods or services, . . . <u>uses in commerce</u> any word, term, name, symbol, or device, . . . or any false designation of origin, false or misleading description of  fact, or false or misleading representation of fact, which-(A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1) (emphasis added).

AART card did constitute "use in commerce" under § 32 of the Lanham Act.  As such, on this issue, AART's counterclaim survives summary judgment.

### b.  The Likelihood of Confusion

As posed in the R&R: "[t]he question is whether relevant persons [the ODH] are likely to believe that the trademark owner's services emanate from or are associated with the collective organization."  (Doc. 67, p. 30).  Ms. Vistein sought summary judgment on the ARRT's infringement claim predicated on the argument that no confusion occurred when she presented her registration card to the ODH because, upon receipt of the altered card, ODH contacted the ARRT to confirm its suspicions that the card had been tampered with.  Reviewing the record in light of the factors enunciated in Frisch's Restaurants v. Elby's Big Boy, the Magistrate Judge's report found the evidence of the likelihood of confusion persuasive enough to deny Ms. Vistein's motion for summary judgment.  Id. pp. 30-32.[2]

In her opposition to the R&R, Ms. Vistein relies upon, as she did in her motion for summary judgment, the decision in Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 423 F.3d 539 (6th Cir. 2005).  Ms. Vistein maintains Gibson is dispositive of her contention that no likelihood of confusion occurred in this instance.  (Doc. 68, p. 6). Gibson is inapposite, however, as it is predicated on the trademark holder's conceding the absence of confusion at the point-of-sale.  In this instance, the trademark holder, the ARRT, argues that a strong potential for confusion remains.  Here, all that is necessary

---

[2]This Court reviewed the Frisch factors, their application to the matter at hand, as well as the R&R's treatment of the factors.  Contrary to Ms. Vistein's hyperbolic brief in opposition, the R&R's treatment of the Frisch factors was correct, balanced, and exhibited fidelity to the extant jurisprudence.

to survive summary judgment is the potential for confusion.  See Opticians Ass'n of Am.
v. Indep. Opticians of Am., 920 F.2d 187, 195 (3ʳᵈ Cir. 1990) (holding that "proof of
actual confusion is not necessary; likelihood is all that need be shown."); Daddy's Junky
Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 284 (6ᵗʰ Cir. 1997)
(recognizing that "plaintiff only must show a sufficient potential of confusion, not actual
confusion") (emphasis original).  This Court finds the ARRT has evidence from which a
jury could reasonably conclude a potential for confusion.  Accordingly, this Court adopts
the R&R's recommendation to deny Ms. Vistein's motion for summary judgment on this
issue.


### c. Damages

Finally, Ms. Vistein contends the ARRT's request for damages its infringement
claim should be dismissed as a matter of law because the ARRT has failed to establish
its damages.  Construing the evidence in the light most favorable to non-movant the
ARRT, the Magistrate Judge found the ARRT had alleged sufficient facts from which a
jury could conclude that the ARRT was damaged by Ms. Vistein's use of its mark.  (Doc.
67, p. 34).  The R&R, however, denied the ARRT claim for income earned by Ms.
Vistein while she was unregistered (Id. at 33) and, further, recognized the brief window
of time in which the ARRT might actually claim damages.  As a result, the R&R
recommended "[a]ny damages suffered b y ARRT as a result of Plaintiff's conduct flow
directly from the alleged infringing incident and thus begin from the time Plaintiff
presented her altered ARRT card to the ODH."  Id. at 34.  The record evidence shows
the ARRT exercised control over its mark when Ms. Vistein stopped using her card after

the ARRT ordered her to cease-and-desist.  Any claim for damages occurred within that time-frame.  Accordingly, this Court adopts the R&R's recommendation to deny Ms. Vistein's motion for summary judgment on ARRT's damages claim.

### B.  Remaining Counterclaims

The R&R recommended denial of Ms. Vistein's motion for summary judgment with regard to the ARRT's claims of: (1) trademark infringement under Section 42(a) of the Lanham Act.  (Doc. 67, pp. 34-35); (2) common law trademark infringement (Doc. 67, p. 36); and, (3) unfair competition and violation of Ohio's Deceptive Trade Practice Act (Doc. 67, pp. 36-38).  Finally, in its brief, the ARRT sought a summary determination on its counterclaims for breach of contract and indemnification.  The ARRT contends it was entitled to indemnification.  The R&R denied the ARRT's motion for summary judgment on its claims for breach of contract and indemnification as these claims applied to the plaintiff's intentional tortious interference with contractual and business relationships claim.  However, the R&R recommended granting the ARRT motion for summary judgment as it applies the defendant's breach of contract and indemnification counterclaims sounding in due process.  (Doc. 67, p. 13).  Mirroring this recommendation, the R&R found Ms. Vistein entitled to summary judgment on the ARRT's counterclaim only with regard to her pursuit of her claim for intentional tortious interference with contractual and business relationships.

Put differently, the R&R recommends, with regard to the ARRT's breach of contract and indemnification claims, that the agreement innoculates ARRT against Ms. Vistein's due process claims and holds her responsible for indemnifying the ARRT's

losses, expenses, costs, damages and judgments, including reasonable attorneys' fees, arising from her pursuit of her claims in this instance.  However, Ms. Vistein is not required to indemnify the ARRT with respect to any losses, costs, damages, judgments, expenses or attorneys' fees arising from her claim of intentional tortious interference with contract.  That part of the defendant's counterclaim is therefore dismissed. Moreover, this Court adopts the R&R's reading of the limit of the agreement, which does not require Ms. Vistein to indemnify the ARRT with respect to any expenses incurred in their pursuit of their counterclaims of trademark infringement, unfair competition, and violation of Ohio's Deceptive Trade Practices Act.

No party has objected to the Magistrate Judge's recommendation regarding the disposition of the ARRT's counterclaims of trademark infringement under Section 42(a) of the Lanham Act, common law trademark infringement, unfair competition and violation of Ohio's Deceptive Trade Practice Act, and breach of contract and indemnification.  Therefore, this Court assumes the parties are satisfied with the R&R's conclusions and recommendations.  Any further review by this Court would be a duplicative and inefficient use of the Court's limited resources.  Thomas v. Arn, 474 U.S. 140 (1985);  Howard v. Secretary of Health and Human Services, 932 F.2d 505 (6th Cir. 1991);  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

### VIII.  Conclusion

Upon a de novo review of the record, where pertinent to Ms. Vistein's objections, this Court hereby adopts Magistrate Judge McHargh's carefully rendered recommendations as to the disposition of the claims and counterclaims in this matter.

31

Accordingly, pursuant to the R&R, the ARRT's motion for summary judgment is granted as to Ms. Vistein's due process claims, granted as to her claim for the intentional tortious interference with contractual and business relationships, and granted as to the ARRT's breach of contract and indemnification claims against Ms. Vistein with respect to her pursuit of her due process claims.  The ARRT's motion for summary judgment is denied as to its breach of contract and indemnification claims against Ms. Vistein with respect to her pursuit of her intentional tortious interference with contractual and business relationships claim.

Ms. Vistein's motion for summary judgment on the ARRT's counterclaims of federal trademark infringement under Sections 32 and 43 of the Lanham Act, common law trademark infringement, federal unfair competition under Section 43 of the Lanham Act, common law unfair competition, and violation of Ohio's Deceptive Trade Practices Act is, hereby, denied.  Further, this Court grants Ms. Vistein summary judgment on the ARRT's counterclaims of breach of contract and indemnification only as they pertain to the plaintiff's claim of intentional tortious interference with contractual and business relationships.  In addition, this Court denies Ms. Vistein's motion for summary judgment on ARRT's counterclaims of breach of contract and indemnification as they pertain to the plaintiff's due process claims.  For the reasons discussed above, this Court denies Ms. Vistein's request for Declaratory Judgment and finds her request for injunctive relief moot.

The case will proceed on the following issues: the ARRT's counterclaims of (1) federal trademark infringement under Sections 32 and 43 of the Lanham Act; (2)common law trademark infringement; (3) federal unfair competition under Section 43

32

of the Lanham Act; (4) common law unfair competition; (5) violation of Ohio's Deceptive

Trade Practices Act; and (6) breach of contract and indemnification as they pertain to

Ms. Vistein's due process claims.  The Court will arrange a telephonic status conference

with counsel to discuss further pre-trial scheduling.


IT IS SO ORDERED.


                                        /s/Lesley Wells                        
                                        UNITED STATES DISTRICT JUDGE